UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD E. BUTCHER, | ) | CASE NO. 5:12CV21 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | Magistrate Judge George J. Limbert |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | **Report and Recommendation** |
| Defendant. | ) | |

Donald E. Butcher ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI") and Disability Income Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the decision of the Commissioner be reversed and the case be remanded for reevaluation and further analysis of the weight assigned to the other source opinions in the record.

**I.**      **PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed an applications for SSI and DIB on April 28, 2009, alleging disability based upon "back problems" beginning February 5, 2002. ECF Dkt. #11 at 119-132, 140-149. Plaintiff met the insured status requirements through December 31, 2004. *Id.* at 14. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at 72-75. On April 23, 2010, Plaintiff filed a request for an administrative hearing. *Id.* at 90-91. On April 13, 2011, an Administrative Law Judge ("ALJ") conducted an administrative hearing where Plaintiff was represented by counsel. *Id.* at 28-71. At the hearing, the ALJ accepted the testimony of Plaintiff and Kevin Z. Yi, a vocational expert ("VE"). *Id.* On April 20, 2011, the ALJ issued a Decision denying benefits. *Id.* at 9-26. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 1-3.

On January 5, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 31, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #12. On July 16, 2012, Defendant filed a brief on the merits. ECF Dkt. #13. No reply brief was filed.

**II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), Dupuytren's contracture[1] of the right hand, cataracts, and hyperopia (farsightedness), which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #11 at 14. The ALJ further determined that Plaintiff suffered from cerumen (earwax) impaction, a non-severe impairment. *Id*. The ALJ then concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926). *Id*. at 15.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except that claimant may only occasionally stoop, crouch, climb ramps and stairs, but may never climb ladders, ropes or scaffolds. He may engage in frequent fine manipulation with the dominant right hand (no non-dominant limitation). Plaintiff may occasionally read with the assistance of corrective lenses and may not perform fine detailed work that requires close precise vision. He must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas, and must avoid all exposure to dangerous machinery, unprotected heights, and like hazards. *Id.* at 15. The ALJ further found that, although Plaintiff was unable to perform past relevant work, there exist jobs in significant numbers in the national economy that Plaintiff can perform, including hand packager, sandwich maker, and food service worker. *Id.* at 210. Accordingly, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits. *Id.* at 21.

**III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

---

[1] A painless thickening and permanent shortening of tissue beneath the skin on the palm of the hand and fingers.

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope

-3-

by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

Plaintiff advances two arguments in this appeal. First, he contends that the ALJ did not properly weigh the medical evidence in the record. Second, Plaintiff contends that the ALJ did not properly assess Plaintiff's credibility. Plaintiff asserts that, based upon the Medical-Vocational Guidelines, a claimant with a high-school education, unskilled past work, and an RFC for light work is disabled at age fifty-five. See Rule 202.04. The same claimant limited to sedentary work is disabled at age fifty. See Rule 201.02. As a consequence, Plaintiff contends that the ALJ should have awarded benefits as of Plaintiff's fiftieth or fifty-fifth birthday, depending upon the lifting limitation established by the evidence in the record.

The Regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Light work requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Sedentary work is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a). If someone can do light work, the Regulations

instruct that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Plaintiff was born on September 6, 1950. ECF Dkt. #11 at 121. He was fifty-one years of age on his onset date and sixty years of age on the hearing date. Plaintiff is a high-school graduate and his past relevant work is unskilled. *Id.* at 35-36. Plaintiff contends that he cannot work because of lower back pain that radiates into his thighs, breathing problems, and cataracts. *Id.* at 38. At the hearing, Plaintiff explained that he cannot afford prescribed medication, and that he treats his back pain with ice and heat. *Id.* at 39.

Plaintiff testified that he is "lucky" if he can carry 15 pounds, because he experiences sharp back pain with exertion. *Id.* at 40. He can sit for ten to fifteen minutes before having to stand. *Id.* at 41. He can stand for one half of an hour, and he can walk approximately one half of a block before he begins breathing heavily. *Id.* Plaintiff lives with his wife and thirty-six year-old son. Plaintiff's impairments prevent him from performing certain household chores, such as vacuuming, however, he does grocery shop with his wife, *Id.* at 45. Plaintiff does the laundry and can cook simple meals. *Id.* at 150.

According to his hearing testimony, Plaintiff quit smoking "cold turkey" one year prior to the hearing (approximately April of 2010) and has suffered no relapses. *Id.* at 42. However, despite quitting tobacco, his breathing is "about the same." *Id.* at 42. He suffers shortness of breath and dizziness as a result of walking, "a lot of movement," and bending. *Id.* Plaintiff had a cataract removed from his right eye, but he has a cataract in his left eye, which he cannot afford to have removed. *Id.* at 43, 363. As a result, he cannot discern words and numbers on a computer screen. *Id.* at 44.

Plaintiff first saw Dale Angerman, M.D., on April 14, 2004 with complaints of head and chest congestion. *Id.* at 199. Plaintiff conceded that he was a "smoker." *Id.* Dr. Angerman prescribed Albuterol and Zithromax. Plaintiff saw Dr. Angerman on April 23, 2004. Angerman diagnosed bronchitis, and his notes reflect that Plaintiff believed that Albuterol was helping. Dr. Angerman prescribed Prednisone that day to be used in addition to the Albuterol and antibiotics. *Id.* at 198.

More than two years later, on September 13, 2006, Plaintiff returned to Dr. Angerman with complaints of shortness of breath. *Id.* at 240. Plaintiff conceded that he smoked a pack of cigarettes every day. Plaintiff told Dr. Angerman that he worked mowing lawns and that he gets short of breath after he "walks a while" and that he wheezes. Dr. Angerman diagnosed shortness of breath and nicotine addiction. Dr. Angerman recommended smoking cessation and prescribed Albuterol and bupropion. He ordered a chest x-ray and pulmonary function test. The chest x-ray showed that Plaintiff's lung fields were clear with no acute infiltrate or effusion. *Id.* at 242. On September 27, 2006, Plaintiff underwent pulmonary function testing, which revealed mild obstructive lung disease with reversibility. *Id.* at 228. Plaintiff did not schedule a follow-up appointment.

On June 24, 2009, Plaintiff underwent an evaluation by Murrell Henderson, D.O. at Affinity Occupational Health for the purposes of the Bureau of Disability Determination. *Id.* at 205-211. Plaintiff was seeking disability due to lower back pain. *Id.* at 205. Plaintiff conceded that he had not seen a physician and did not take any medication for his back pain. Dr. Henderson diagnosed low back pain, of undetermined etiology, early Dupuytren's contracture, and decreased visual acuity. Dr. Henderson concluded that "[r]ange of motion of the lumbar spine did not appear to be a limiting factor," and that "[n]o definitive diagnosis or supporting documentation is present to determine if there are any anatomical lesions precluding or causing the work limitations due to the lower back." *Id.* at 206. Dr. Henderson observed no limitations upon Plaintiff's ability to lift, carry, sit, stand, or walk. *Id.* at 208-209. No evaluation of Plaintiff's mild obstructive lung disease was provided, however, it is important to note that Plaintiff's disability claims were predicated exclusively upon back problems. *Id.* at 144.

On that same day, Dimitri Teague, M.D., a state reviewing consultant, completed a physical residual functional capacity assessment ("RFCA") of Plaintiff. *Id.* at 212-220. Dr. Teague opined that Plaintiff was capable of lifting or carrying fifty pounds occasionally and twenty-five pounds frequently. He further opined that Plaintiff could sit, stand, and walk about six hours each in a work day. Plaintiff could not perform frequent reading of small text and print, and he should avoid moderate exposure to hazards such as heights and machinery, due to his vision problems. Dr.

-6-

Teague concluded that Plaintiff was capable of medium work because there were no "actual significant physical findings noted in the file." *Id.* at 220.

Plaintiff returned to Dr. Angerman on August 25, 2009 complaining of back pain and a cough. *Id.* at 303. Dr. Angerman's notes read:

> We have not seen [Plaintiff] for 3 years. He apparently applied for social security disability and was evaluated at Affinity in Massillon. They did not do a back x-ray, and told him he should have seen his family doctor first and had a back x-ray ordered by his family doctor. He has diffuse lower back pain. It is nonradiating. It keeps him from bending over. He says it keeps him from working. He has not worked for a number of years. Also has a cough. . .He had been on albuterol in the past. He had had [sic] pulmonary function tests that showed mild obstructive lung disease. He is not using the inhaler now. He gets short of breath when he exerts himself.

*Id.* at 304. Plaintiff reported that he still smoked one pack of cigarettes a day and drank at least four beers a day. *Id.* Dr. Angerman's examination revealed tenderness over the lower lumbar spine but Plaintiff's straight-leg test was negative and Plaintiff reported a pain level of three on a scale of one to ten. *Id.* at 305. Dr. Angerman ordered a chest x-ray and an x-ray of Plaintiff's lumbar spine, as well as spirometry to determine if his lung function had worsened over time. He prescribed Albuterol and scheduled a follow-up appointment in four weeks. *Id.*

Plaintiff next appointment with Dr. Angerman was on November 6, 2009. *Id.* at 309. Plaintiff's chest x-ray was normal, and the x-ray of his lumbar spine showed degenerative disc disease "most severe changes at L2-L3 with degenerative changes at multiple levels." *Id.* at 309. Spirometry showed mild obstructive airway disease, which did not improve with a bronchodialator. *Id.* at 309. A comprehensive metabolic panel revealed elevated enzyme levels. Dr. Angerman diagnosed COPD, elevated liver enzymes due to alcohol abuse, and low back pain. *Id.* at 309. Dr. Angerman recommended that Plaintiff cut back on his drinking and quit smoking. He prescribed Albuterol and Spiriva (tiotropium). Dr. Angerman did not prescribe pain medication for Plaintiff's back and he did not recommend physical therapy. Furthermore, Dr. Angerman did not suggest over-the-counter pain medication. He recommended a follow-up appointment in one month.

On January 2, 2010, state non-examining consultant Anton Freihofner, M.D. concluded that Plaintiff "would get a medium RFC with frequent stooping/crouching/ladders with [the information] in [the] file." *Id.* at 287. On January 21, 2010, Dr. Freihofner completed a RFCA, in which he

found Plaintiff capable of lifting or carrying fifty pounds occasionally and twenty-five pounds frequently, and of standing and walking and sitting about six hours. Dr. Freihofner concluded that Plaintiff's back pain and COPD were mild, according to the medical records. *Id.* at 292. Plaintiff was not able to climb ladders, ropes, or scaffolds, and could not be exposed to dangerous machinery, unprotected heights, or undergo concentrated exposure to fumes, odors, gases or poor ventilation, or perform fine detailed work or commercial driving, but he could occasionally stoop and crouch, and read with low vision aids. *Id.* at 291-298.

Jeffrey W. Perkins, M.D. performed cataract extraction on Plaintiff's right eye on February 23, 2010. *Id.* at 379. *Id.* at 379. At a follow-up appointment on March 3, 2010, Plaintiff complained of fogginess in his left eye. *Id.* at 365. Plaintiff decided to forego cataract removal from his left eye because he could not afford the surgery, and he was doing well with over-the-counter reading glasses. *Id.* at 363.

Plaintiff returned to Dr. Angerman on March 29, 2010. *Id.* at 338-340. Dr. Angerman's notes reveal that Plaintiff was smoking one or two cigarettes a day and that his application for social security disability had been denied. Plaintiff reported "some back pain" and said that "he can't lift or carry." *Id.* at 338. Despite Dr. Angerman's previous admonitions, Plaintiff also continued to drink four beers a day. *Id.* at 339. Dr. Angerman diagnosed COPD and recommended that Plaintiff quit smoking. *Id.* Theresa K. Berg, CNP noted at a June 15, 2010 appointment that Plaintiff had reduced his smoking to approximately three cigarettes per day and occasionally had smoke-free days. *Id.* at 388.

On January 21, 2011, Kirby Flanagan, M.D., examined Plaintiff on behalf of the Wayne County Department of Job and Family Services. Dr. Flanagan opined that Plaintiff could walk one to two hours in a workday, one half of an hour at a time, and that he could lift and carry up to five pounds frequently and ten pounds occasionally. He did not identify any limitation on Plaintiff's ability to stand. However, Dr. Flanagan opined that Plaintiff would be moderately limited in his abilities to push, pull, bend, and see. Dr. Flanagan predicated his conclusions upon Plaintiff's COPD, shortness of breath on exertion, degenerative disc disease, and cataracts. Despite the foregoing limitations, Dr. Flanagan nonetheless characterized Plaintiff as "employable." *Id.* at 302.

Dr. Angerman referred Plaintiff to Jessica Glenbocki, OTR/L, for a functional capacity evaluation, which was completed on April 8, 2011. *Id.* at 353. According to Ms. Glenbocki, Plaintiff lifted fifteen pounds comfortably and twenty-five pounds maximally at floor and knee levels, and ten pounds and twenty pounds, respectively, at waist, shoulder, and overhead levels. *Id.* at 357-358. Plaintiff could occasionally bend, squat, kneel, reach out and up, and sit, and could frequently walk or stand. Ms. Glenbocki noted that Plaintiff provided "good effort." *Id.* at 356. Plaintiff reported pain of eight on a scale of one to ten during the lifting exercises. *Id.* at 356. IT is important to note that, during the assessment, Plaintiff informed Ms. Glenbocki that he had been receiving social security benefits since 2002.

Dr. Angerman completed an RFCA on April 8, 2011. According to Dr. Angerman, Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently, stand or walk about two hours in a workday, fifteen minutes at a time, with the opportunity to change position at will. Plaintiff could never crouch or climb ladders, he could occasionally twist, stoop, and climb stairs, he was limited in his capacity to reach, handle, finger, feel, push, and pull. Plaintiff must avoid concentrated exposure to extreme heat, high humidity, and perfumes, and must avoid even moderate exposure to extreme cold, fumes, odors, dusts, gases, solvents, and cleaners. *Id.* at 359-361.

In a letter addressed to Dr. Angerman and dated April 11, 2011, Ms. Glenbocki summarized her findings as follows: "Based on [Plaintiff's] performance during the evaluation, he tested at Sedentary Light Physical Demand Level for activity at floor and knee levels, and Sedentary Physical Demand Level for activity at waist, shoulder, and above-shoulder levels. Bending, squatting, kneeling, reaching out and up, sitting, and carrying tolerances were decreased. *Id.* at 353. Based upon the dates of Dr. Angerman's RFCA and Ms. Glenbocki's letter, Dr. Angerman completed his RFCA prior to receiving Ms. Glenbocki's summary of findings.

Turning to Plaintiff's first argument, Plaintiff contends that the ALJ did not properly weigh the opinions of Dr. Angerman, Dr. Flanagan, and Ms. Glenbocki. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996);

*Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not

-10-

entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id.* at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id.*

> 20 C.F.R. 416.927, captioned "Evaluating opinion evidence," reads, in pertinent part:
>
> (ii) When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (e) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Social Security Ruling 96–6p states that "[i]n appropriate circumstances, opinions from state agency medical and psychological consultants ... may be entitled to greater weight than the opinions of . . . . examining sources." See *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 245 n.4 (6th Cir.2007). This may be true, for example, if " 'the State agency medical . . .consultant's opinion is based on a review of a complete case record that. . .provides more detailed and comprehensive information than what was available to the individual's treating source.' " *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009); see also *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir.2007).

The ALJ provided the following explanation for giving little weight to the opinion of Dr. Angerman:

> I discounted Dr. Angerman's assessment for several reasons. First, Dr. Angerman treated the claimant, but, by the claimant's own admissions, never examined him (hearing testimony). Second, he did not relate "Particular medical findings to

reduction in capacity" as the form directed, such that I could assess the adequacy of the foundation of his opinions. Third, even beyond his failure to follow the specific instruction on the form used, Dr. Angerman provided no explanation or analysis whatsoever for any of his findings. Fourth, if Dr. Angerman is relying on the Occupational Therapy assessment in his report (he never tells us), there are inconsistencies between those findings and his own opinions, especially in the important area of standing. Fifth, Dr. Angerman reports that he evaluated claimant for shortness of breath alone. Sixth, Dr. Angerman's assessment is not only inconsistent with those of State Agency consultants, but also that of Dr. Flanigan, who concludes claimant is "employable." Seventh, as with Dr. Flanigan, Dr. Angerman's opinion was not supported by the conceded abilities of the claimant to lift twenty-five pounds[2] and to be able to stand essentially at will.

*Id*. at 19.

The ALJ also gave little weight to the opinions of Dr. Flanagan and Ms. Glenbocki:

Although Dr. Flanagan examined the claimant and was reporting within the bounds of his professional certifications, I discounted his opinion, in large measure for six reasons. First, his lifting assessment is much more drastic than claimant's own conceded ability to lift under fifty pounds, with twenty-five pounds "pushing it" (3E). Second, there is a similar disconnect between Dr. Flanagan's standing limitation opinion and claimant's concession that he would have no problem standing. (3E). Third, his assessment is apparently based upon one examination alone with no treatment history, such that his assessment is based upon a single snapshot, as opposed to a longitudinal care history. Fourth, the thoroughness of his foundational examination is in question since he did not detect the Dupuytren's contracture of the right hand revealed during Dr. Henderson's consultative examination. Fifth, the extent of the postural and vision limitations he advances are not defined, Sixth, he opines claimant is "employable." Although I do recognize that this conclusion is reserved for the Commissioner, I consider it for the limited purpose of putting into perspective Dr. Flanagan's overall subjective take-away regarding the gravity of Plaintiff's impairments.

. . . .

I discounted [Glenbocki's] opinion for three reasons. First, her overall conclusions were based, in large measure, upon the subjective reports of claimant during testing, and vulnerable to skewing thereby. Second, her conclusions were inconsistent with those of consultative examiner Dr. Henderson, an examiner with a greater level of pertinent credentials. Third, although Ms. Glenbocki examined the claimant and was reporting within the bounds of her professional certifications, her opinions were inconsistent with the claimant's conceded lifting and carrying abilities, noted above.

*Id*. at 18-19.

The ALJ gave considerable weight to the opinion of Dr. Freihofner and some weight to the opinion of Dr. Teague, the state agency non-examining medical consultants. The ALJ observed that Dr. Freihofner had an opportunity to review Plaintiff's records, and was "well versed in the

---

[2]The report of contact, dated May 27, 2009, upon which the ALJ relies, reads, in pertinent part, "Claimant says he would be able to lift under 50 pound [sic], 25-20 is pushing it." *Id.* at 150.

terminology and analytical framework." *Id*. at 18. The ALJ nonetheless imposed additional limitations in the RFC based upon Plaintiff's hearing testimony.

Plaintiff correctly observes that several of the reasons that the ALJ provided for giving little weight to the opinion of Dr. Angerman are misplaced. First, the ALJ contends that Plaintiff conceded at the hearing that Dr. Angerman never examined him. The ALJ further states that Dr. Angerman only evaluated Plaintiff for shortness of breath. Both conclusions are contradicted by the record. Next, the ALJ concludes that Dr. Angerman's conclusions are directly at odds with Plaintiff's own assessment of his residual functional capacity in a report of contact, dated May 27, 2009. The report reads, in pertinent part, "Claimant says he can stand for quire [sic] a while 'standing doesn't bother me at all,'" and "Claimant says he would be able to lift under 50 pound [sic], 25-20 is pushing it." *Id.* at 150. Plaintiff's statement does not establish that he can lift twenty-five pounds, to the contrary, Plaintiff's statement demonstrates that twenty-five pounds is beyond the maximum amount of weight that he can lift.

On the other hand, several of the reasons that the ALJ provided for rejecting Dr. Angerman's opinion regarding Plaintiff's limitations are well-taken. The ALJ noted that Dr. Angerman provided no explanation for his conclusions, despite being directed to do so on the RFCA form. Moreover, Dr. Angerman's medical records do not support his conclusions regarding the severity of Plaintiff's limitations. Dr. Angerman's notes recommend no treatment for Plaintiff's back pain (he does not even suggest over-the-counter pain medication) and he characterizes Plaintiff's COPD as mild. The ALJ also noted that Dr. Angerman's conclusions are at odds with the various assessments of Plaintiff's residual functional capacity in the record. The ALJ misreads Dr. Flanagan's RFCA, that is, Dr. Flanagan does not appear to place any limitation on Plaintiff's ability to stand. However, the ALJ is correct that Dr. Angerman's RFCA is at odds with Dr. Flanagan's RFCA in that Dr. Angerman concludes that Plaintiff can only stand fifteen minutes at a time.

The undersigned recommends that the Court find that the ALJ provided a sufficient explanation for his decision to give little weight to Dr. Angerman's opinion. Dr. Angerman cited no objective medical evidence for the extreme limitations he described, and his medical notes do not support his conclusions regarding Plaintiff's residual functional capacity. The x-rays and

spirometry results in the record establish mild back pain and mild breathing problems. Furthermore, because Dr. Angerman neither prescribed pain medication nor recommended physical therapy or over-the-counter medication for Plaintiff's lower back pain, the degree of Plaintiff's physical limitations resulting from his back pain is not supported by the record. Plaintiff contends that he did not take prescribed medication because he could not afford it, however, the record reflects that prescription pain medication was never prescribed. Dr. Angerman's failure to prescribe pain medication is consistent with his diagnosis of mild back pain. It is also consistent with Plaintiff's own statement that his pain was at level three on a scale of one to ten. Similarly, the objective medical evidence in the record does not support Dr. Angerman's conclusions with respect to Plaintiff's limitations due to his COPD. Plaintiff reported that Albuterol was helping his breathing problem, which all of the objective medical evidence established was a mild condition.

Plaintiff further contends that the ALJ erred in giving little weight to the opinions of Dr. Flanagan and Ms. Glenbocki, while giving considerable weight to the opinion of Dr. Freihofner and some weight to the opinion of Dr. Teague. Plaintiff correctly asserts that neither Dr. Freihofner nor Dr. Teague had reviewed the assessments completed by Dr. Flanagan and Ms. Glenbocki. Moreover, the ALJ's reasons for rejecting the opinions of Dr. Flanagan and Ms. Glenbocki are misplaced. For instance, throughout his Decision, the ALJ cited the statement made by Plaintiff that "he would be able to lift under 50 pound [sic], 25-20 is pushing it." *Id.* at 150. As stated previously, Plaintiff's statement establishes that he could not lift twenty to twenty-five pounds. As a consequence, the lifting limitations assigned by Dr. Flanagan and Ms. Glenbocki are not contradicted by Plaintiff's statement. Moreover, as Plaintiff correctly observes, Plaintiff's assessment of what he could lift a single time is hardly as compelling as the testimony of physicians and occupational therapists charged with the duty to determine his residual functional capacity. Also, the ALJ cites Dr. Flanagan's statement that Plaintiff, despite his physical limitations, is employable. Plaintiff correctly observes that Dr. Flanagan's conclusion could be based upon Plaintiff's ability to perform light or sedenary work. However, under the Guidelines, Plaintiff is considered disabled at a certain age, despite his ability to perform light or sedenary work. The ALJ criticized Dr. Flanagan's thoroughness based upon his failure to diagnose Plaintiff's Dupuytren's

-14-

contracture, but he did not similarly criticize Dr. Henderson's failure to diagnose Plaintiff's breathing problems. Finally, the ALJ contends that Dr. Flanagan imposed a stricter limitation on Plaintiff's ability to stand, which contradicted Plaintiff's own statement that standing is not a problem. As stated previously, Dr. Flanagan circled "walking" on his RFCA, to distinguish Plaintiff's abilities to stand and walk. Because the ALJ predicated the weight given to the opinions of various other sources on explanations that do not have merit, the undersigned recommends that the Court remand this matter in order to permit the ALJ to reconsider the weight assigned to the opinion evidence in this case.

Next, Plaintiff contends that the ALJ did not properly assess his credibility. When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ discounted Plaintiff's testimony for two reasons. First, the ALJ acknowledged that Plaintiff has made inconsistent statements on issues of importance to the disposition of his claim. Notably, in the course of his functional capacity assessment by Ms. Glenbocki, Plaintiff represented that he had been receiving social security benefits since 2002. ECF Dkt. #11 at 555. At the hearing, Plaintiff conceded that he had never received social security

-15-

benefits. Furthermore, Plaintiff told Ms. Glenbocki that he performed odd jobs, such as woodworking and lawn mowing, which he did not divulge to Dr. Henderson. Likewise, the ALJ pointed to Plaintiff's sporadic prior work history to conclude that his continuing current unemployment may not necessarily be due to medical impairments. Accordingly, the ALJ articulated valid reasons for disbelieving Plaintiff's allegations of debilitating pain, in addition to the lack of objective medical evidence in the record establishing Plaintiff's alleged level of pain.

For the foregoing reasons, the undersigned recommends that the decision of the Commissioner be reversed and the case be remanded for reevaluation and further analysis of the weight assigned to the other source opinions in the record.

DATE: July 31, 2012

                                            */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).